

_____FILED          _____RECEIVED
_____ENTERED        _____SERVED ON
            COUNSEL/PARTIES OF RECORD

APR 0 6 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

**AMENDED COMP**
Phillip Charles Aught JR.
12333 Silvana Street
Las Vegas, Nevada 89141
(702) 210-6081
Phillipaught15@gmail.com
PLAINTIFF IN PROPER PERSON

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## LAS VEGAS DIVISION

**PHILLIP CHARLES AUGHT JR.**
**Plaintiff in Proper Person**

Plaintiff,

-vs-

CLARK COUNTY, NEVADA;CITY OF LAS VEGAS, NEVADA;LAS VEGAS METROPOLITAN POLICE DEPARTMENT (LVMPD);CLARK COUNTY OFFICE OF PUBLIC SAFETY; CLARK COUNTY DISTRICT ATTORNEY'S OFFICE; STATE OF NEVADA for declaratory and injunctive relief; CHIEF NEWSOME, in his individual and official capacities; TERRENCE McCarthy, in his individual and official capacities; CHIEF JAMES ROGERS, in his individual and official capacities; OFFICER BRIAN COOPERMAN, in his individual and official capacities; ALEXANDER CHEN, in his individual capacity; JAMIE HONAKER, in his individual capacity; STEVE WOLFSON, in his individual and official capacity; BOBBY ANDERLIK, in his individual capacity; JULIA WATSON, in his individual capacity; JUDGE MATTHEW WALKER, in his individual capacity and official; SGT TIMOTHY SPIES, in his individual capacity; Marshal D. BLY, in his individual capacity; MARSHAL ADAM PAIGE, in his individual capacity; LT. TISINO, in his individual capacity; MARSHAL GARRICK STRONG, in his individual capacity; MARSHAL R. TAYLOR, in his individual capacity; SGT. PASCOE #14879, in his individual capacity; OFFICER M. ROE, in his individual capacity;SGT. WALSH, in his individual capacity; OFFICER Patches #17158 in her individual capacity; OFFICER A. BRONSTON #14984, in his individual capacity; OFFICER GARCIA, M #16785., in his individual capacity; OFFICER MORROW #17160, in his individual capacity; OFFICER MOORE #17384, in his individual capacity; OFFICER HOLGUIN #16892, in his individual capacity; OFFICER NEWBERRY #18284, in his individual capacity; OFFICER WHEARTY #17747, in his individual capacity; OFFICER GARCIA, J #17458., in his individual capacity; LENA STELK, in her individual capacity; HANS JESSUP, in his individual capacity; PAMELA JEFFERSON, in her individual capacity;LVMPD RISK

**Amended Complaint**

**JURY TRIAL DEMANDED**

*Case No.* **2:25-cv-00854-RFB-MDC**

MANAGEMENT; **AMANDA SANG** in her individual capacity; **SHANDEL AUTUN**, in her individual capacity; DOES I–XX, inclusive,

Defendants.

## COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS (42 U.S.C. § 1983)

### *INTRODUCTION*

1. This is a civil rights action arising under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Plaintiff was subjected to unlawful detention, retaliation for protected activity, and systemic obstruction of his ability to seek redress, all by individuals acting under color of state law.

### *II. JURISDICTION AND VENUE*

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.
4. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the events giving rise to these claims occurred in Clark County, Nevada.

### III. PARTIES

5. Defendants CLARK COUNTY, NEVADA; CITY OF LAS VEGAS, NEVADA; LAS VEGAS METROPOLITAN POLICE DEPARTMENT (LVMPD); and CLARK COUNTY OFFICE OF PUBLIC SAFETY are governmental entities and/or departments responsible for the policies, practices, training, supervision, and conduct of their employees acting under color of law.

6. Defendant CLARK COUNTY DISTRICT ATTORNEY'S OFFICE is a governmental entity and/or subdivision of Clark County responsible for the prosecution of criminal matters within Clark County, Nevada. At all relevant times, it acted through its employees, agents, and policymakers, and was responsible for establishing, implementing, and enforcing policies, practices, and customs governing prosecutorial conduct, interactions with the public, and coordination with law enforcement agencies. The actions taken by its personnel, as alleged herein, were undertaken under color of state law. To the extent the Clark County District Attorney's Office is not a separately suable entity, Plaintiff alleges that its actions were undertaken as part of Clark County, Nevada, and are attributable to Clark County for purposes of municipal liability under 42 U.S.C. § 1983.

7. Defendant STATE OF NEVADA is named for declaratory and injunctive relief purposes only.

8. Defendant CHIEF NEWSOME is sued in his individual and official capacities.

9. Defendant TERRENCE McCarthy is sued in his individual and official capacities.

10. Defendant CHIEF JAMES ROGERS is sued in his individual and official capacities.

11. Defendant BRIAN COOPERMAN is sued in his individual and official capacities.

12. Defendant STEVE WOLFSON is sued in his individual and official capacities.

13. Defendant ALEXANDER CHEN is sued in his individual capacity.

14. Defendant JAMIE HONAKER is sued in his individual capacity.

15. Defendant BOBBY ANDERLIK is sued in his individual capacity.

16. Defendant JULIA WATSON is sued in her individual capacity.

17. Defendant JUDGE MATTHEW WALKER is sued in his individual capacity and in his official capacity for declaratory relief only.

18. Defendant TIMOTHY SPIES is sued in his individual capacity.

19. Defendant D. BLY is sued in his individual capacity.

20. Defendant ADAM PAIGE is sued in his individual capacity.

21. Defendant LT. TISINO is sued in his individual capacity.

22. Defendant GARRICK STRONG is sued in his individual capacity.

23. Defendant R. TAYLOR is sued in his individual capacity.

24. Defendant SGT. PASCOE is sued in his individual capacity.

25. Defendant OFFICER M. ROE is sued in his individual capacity.

26. Defendant SGT. WALSH is sued in his individual capacity.

27. Defendant OFFICER #17158 ("PATCHES") is sued in his/her individual capacity.

28. Defendant OFFICER BRONSTON #14984 is sued in his individual capacity.

29. Defendant OFFICER A. (#14984) is sued in his individual capacity.

30. Defendant OFFICER GARCIA, M. #16785 is sued in his individual capacity.

31. Defendant OFFICER MORROW is sued in his individual capacity.

32. Defendant OFFICER MOORE is sued in his individual capacity.

33. Defendant OFFICER HOLGUIN is sued in his individual capacity.

34. Defendant OFFICER NEWBERRY is sued in his individual capacity.

35. Defendant OFFICER WHEARTY is sued in his individual capacity.

36. Defendant OFFICER GARCIA, J. #17458 is sued in his individual capacity.

37. Defendant LENA STELK is sued in her individual capacity.

38. Defendant HANS JESSUP is sued in his individual capacity.

39. Defendant PAMELA JEFFERSON is sued in her individual capacity.

40. Defendant LVMPD RISK MANAGEMENT is a subdivision and/or operational unit of LVMPD responsible for handling claims, liability determinations, and public-facing legal processes.

41. Defendant AMANDA SANG is sued in her individual capacity.

42. Defendant SHANDEL AUTEN is sued in her individual capacity.

43. Defendants DOES I–XX are individuals and/or entities whose identities are presently unknown, who participated in or are responsible for the violations alleged herein, and will be substituted when identified.

44. **At all times relevant herein, each Defendant acted under color of state and/or local law within the meaning of 42 U.S.C. § 1983.**

45. **(a) LVMPD Officers and Supervisors acted under color of law as sworn peace officers employed by a governmental law enforcement agency, exercising authority granted by the State of Nevada.**

46. **(b) Clark County Court Marshals &other Clark County Staff acted under color of law as officers of the court responsible for courthouse security and enforcement of judicial authority.**

47. **(c) Prosecutors acted under color of law as representatives of the State in initiating and pursuing criminal proceedings.**

48. (d) Judges acted under color of law in their judicial capacity, subject to limitations regarding declaratory relief.

49. (e) Administrative and Risk Management personnel acted under color of law by exercising authority derived from their official governmental roles and by controlling access to complaint and claims processes.

50. (f) Municipal entities acted under color of law through their policies, customs, and practices.

## IV. FACTUAL ALLEGATIONS

### A. April 23, 2025 – Armed Threat Incident and Recording Interference
### B.

51. On April 23, 2025, Plaintiff responded to a report that a neighbor had pointed a firearm at multiple minor children and threatened to shoot them.

52. Multiple witnesses provided consistent statements, and officers reviewed video evidence confirming the conduct.

53. Despite clear probable cause, officers declined to make an arrest.

54. Plaintiff lawfully recorded the police activity.

55. Officers interfered with Plaintiff's recording by: Physically obstructing his camera view; Yelling to disrupt communication; Preventing identification of officers. This conduct violated Plaintiff's right to record law enforcement activity.

### B. Retaliation and Obstruction Following Complaints

56. Plaintiff filed multiple complaints with Internal Affairs and Risk Management.

57. LVMPD Risk Management personnel, including **Defendants Amanda & Shandel**, repeatedly: Provided fal

58. se and conflicting information; Refused to provide correct claim procedures; Delayed and obstructed Plaintiff's ability to file claims.

59. Plaintiff was intentionally steered away from proper processes, interfering with his ability to seek redress.

### C. May 6, 2025 – Internal Affairs Obstruction and Retaliation

60. On May 6, 2025, Plaintiff went to LVMPD Headquarters to obtain information regarding a government employee and to file an Internal Affairs complaint.

61. Defendant Officer M. Roe immediately engaged in aggressive and intimidating behavior, yelling at Plaintiff from behind a secured glass barrier.

62. After Plaintiff stated his intent to file an Internal Affairs complaint, Defendant Roe, along with Defendant Officer #17158 ("Patches"), followed Plaintiff from Building C to Building A.

63. Defendants Roe and Patches entered the Internal Affairs office and physically positioned themselves in a manner that blocked Plaintiff's ability to submit a complaint.

64. An Internal Affairs volunteer present at the scene laughed and failed to assist Plaintiff, further contributing to the obstruction.

65. Plaintiff requested the presence of a supervising officer to report the conduct as harassment and intimidation.

66. Instead of facilitating a complaint, Defendants threatened Plaintiff with arrest.

67. As a direct result of Defendants' actions, Plaintiff was prevented from filing his Internal Affairs complaint.

### D. May 6, 2025 – Misrepresentation and Interference with Claims Process

68. Later that same day, Plaintiff filed additional complaints with the Citizens Review Board and submitted Risk Management claims to both LVMPD and Clark County.

69. Plaintiff also filed Internal Affairs complaints against Defendants Roe and Patches.

70. Plaintiff was subsequently contacted by a supervising officer, who falsely stated that LVMPD did not maintain a Risk Management department and instructed Plaintiff to submit his claim through Internal Affairs.

71. This statement was knowingly false and was intended to misdirect Plaintiff and interfere with his ability to pursue a lawful claim.

72. Plaintiff relied on accurate information from other sources confirming that LVMPD does, in fact, maintain a Risk Management division responsible for such claims.

73. The deliberate misrepresentation caused confusion, delay, and interference with Plaintiff's ability to seek redress.

### E. Pattern of Obstruction – March 7, 2025, through May 7, 2025

74. On March 7, 2025, Plaintiff filed complaints against LVMPD Risk Management personnel, including Amanda Shandel, regarding misconduct and misrepresentation.

75. Plaintiff sought guidance on filing criminal charges against Defendant Roe and attempted to obtain assistance from multiple agencies, including the District Attorney's Office, Citizens Review Board, and Nevada State Bar.

76. Despite repeated attempts, Plaintiff was consistently redirected, misinformed, or denied assistance.

### F. May 7, 2025 – Continued Obstruction and Intimidation

77. Plaintiff subsequently attempted to report this conduct to the Clark County Office of Public Safety and requested identifying information for the responding officers.

78. Upon arrival, Plaintiff found the office door locked and was required to wait outside. Chief James Rogers came to the door, questioned Plaintiff regarding the nature of his complaint, and instructed him to wait.

79. Plaintiff was forced to remain outside the building for approximately seven (7) minutes before Chief Rogers returned with a complaint form.

80. When Plaintiff requested to enter the building to complete the form due to the heat, Chief Rogers denied the request, stating, "we typically don't allow people to do that," despite Plaintiff being present for lawful governmental business.

81. Plaintiff was therefore compelled to complete the complaint form in his vehicle under unnecessary and burdensome conditions.

82. Plaintiff returned the completed complaint form directly to Chief Rogers; however, the process imposed by Defendants created additional delay, inconvenience, and obstruction.

83. Plaintiff's requests for identifying information regarding the involved officers were initially denied by Chief Rogers, further obstructing his ability to file complaints and seek accountability.

84. Later that same day, at approximately 5:30 p.m., Plaintiff observed that a printed headshot photograph of himself, dating back to approximately 2015, had been placed at a public-facing information desk within the Clark County facility.

85. When Plaintiff inquired about the photograph, the lead staff member **Defendant Brian Cooperman** initially denied that the image depicted Plaintiff, stating, "that's not you."

86. Shortly thereafter, the same staff member acknowledged that the display of Plaintiff's photograph was a violation of internal policy and stated that the matter would be addressed.

87. On May 21, 2025, Plaintiff filed formal complaints with Clark County Human Resources against District Attorney staff for providing false information regarding the process for filing criminal charges against a law enforcement officer.

88. Plaintiff also filed a complaint against Clark County security personnel for defamation and improper dissemination of his image in a manner that was intimidating and damaging to his reputation.

89. Plaintiff attempted to follow up with security personnel regarding the incident; however, he was met with repeated delays, evasive responses, and a refusal to provide meaningful assistance.

90. The above-described conduct, including denial of access to complaint processes, withholding of identifying information, public display of Plaintiff's image, and repeated runaround by officials, constitutes a pattern of intimidation, obstruction, and retaliation against Plaintiff for engaging in protected activity.

### G. Systemic Pattern

91. The conduct described above reflects a coordinated and ongoing pattern of obstruction, intimidation, and retaliation by Defendants. Plaintiff was repeatedly prevented from: Filing complaints; Obtaining accurate information; Identifying responsible officials; Accessing lawful remedies.

92. These actions were taken in response to Plaintiff's protected activity, including recording law enforcement and filing complaints.

93. Defendants' conduct was intentional, retaliatory, and carried out under color of law.

### May 21, 2025 – Armed Assault and Subsequent Police Conduct

94. On May 21, 2025, at approximately 7:00 a.m., Plaintiff dropped his children off at school and began traveling on a public roadway when he encountered a red BMW stopped in the middle of the street. As Plaintiff attempted to safely maneuver around the vehicle, the driver abruptly accelerated and aggressively pursued Plaintiff, attempting to run him off the roadway. This pursuit continued for approximately one (1)

mile. During the pursuit, the driver of the BMW brandished a firearm on three separate occasions, pointing it directly at Plaintiff. Fearing for his life, Plaintiff ultimately discharged a single round in self-defense during the third instance of the firearm being drawn. Immediately following the incident, Plaintiff safely stopped his vehicle, placed his firearm on top of his car, and instructed a nearby witness to contact law enforcement. Plaintiff remained on scene and fully cooperated. Upon arrival, responding officers detained Plaintiff outside in the heat for over two (2) hours. Officers ultimately provided Plaintiff with documentation identifying him as the victim. Despite acknowledging Plaintiff as the victim, officers attempted to conduct a warrantless search of Plaintiff's vehicle. Plaintiff clearly and explicitly refused consent and requested that officers obtain a warrant. Officers nevertheless seized Plaintiff's lawfully owned firearm and refused to return it. Additionally, officers indicated an intent to search Plaintiff's vehicle for other firearms allegedly connected to the discharged round, despite Plaintiff's refusal and absence of a warrant. Plaintiff complied with all lawful commands and remained cooperative throughout the encounter.

### H. May 23, 2025 – Unlawful Retention of Firearm and Obstruction

95. On May 23, 2025, at approximately 1:40 p.m., Plaintiff went to LVMPD to retrieve his lawfully owned firearm. A supervising officer, identified as Sgt. Couier, informed Plaintiff that the District Attorney's Office was responsible for authorizing the release of the firearm, despite Plaintiff not being a suspect in any criminal investigation. Plaintiff was further advised that LVMPD would not release the firearm until the District Attorney determined whether charges would be filed, even though Plaintiff had already been identified as the victim in the underlying incident Plaintiff then went to the Clark County District Attorney's Office and spoke with a manager identified as "Tony." Tony provided multiple inconsistent explanations, stating at various times that the District Attorney's Office did not possess the firearm while simultaneously acknowledging that LVMPD would not release it without their authorization. When Plaintiff questioned these contradictions, Tony became evasive and authorized staff to contact security rather than provide a clear answer. Plaintiff advised Tony that the continued retention of his firearm violated his rights; however, Tony disregarded these concerns. Security personnel, including Officer Panos (#506), arrived and indicated they would escort Plaintiff out. Plaintiff remained calm and cooperative, and even security personnel acknowledged that no disturbance had occurred. Plaintiff completed his interaction and left without incident.

### May 26–27, 2025 – Continued Obstruction and Misrepresentation

96. On May 26, 2025, Plaintiff filed ethics complaints against officials within the Attorney General's Office and the District Attorney's Office. On May 27, 2025, Plaintiff spoke with a representative from the District Attorney's Victim/Witness Unit, who advised that Plaintiff could not independently initiate criminal charges against law enforcement officers. Plaintiff was further informed that his firearm would be returned the following day. Later that day, Plaintiff visited the District Attorney's Office. Staff members repeatedly questioned Plaintiff's purpose for being there and engaged in dismissive and unprofessional conduct, including laughing during communications about Plaintiff.

### May 28, 2025 – Delay, Evasion, and Court Obstruction

97. On May 28, 2025, at approximately 10:00 a.m., Plaintiff returned to the District Attorney's Office to retrieve his firearm. Despite prior assurances, the assigned representative failed to appear, respond to calls, or respond to email communications. After waiting approximately twenty (20) minutes, Plaintiff was directed to another official, Defendant Alexander Chen. Chen disputed prior representations, engaged in argumentative conduct, and delayed resolution. After further discussion, Plaintiff was told that the firearm would be released in an additional two days. Later that day, Plaintiff visited the federal courthouse to address deficiencies in his filed lawsuit, including omitted defendants. Court staff were dismissive and refused to provide meaningful assistance. Plaintiff subsequently filed a judicial complaint regarding this conduct. Plaintiff also visited the FBI to provide an update regarding ongoing misconduct and followed up with the Nevada State Bar regarding pending complaints. That same evening, Plaintiff issued a formal Preservation of Evidence notice to multiple agencies, including LVMPD, the District Attorney's Office, Clark County, and other relevant entities, notifying them of pending federal civil rights litigation.

### I.    May 29, 2025 – Interference with Court Access

98. On May 29, 2025, Plaintiff returned to the federal courthouse and spoke with court staff, including supervisory personnel. Plaintiff was provided inconsistent and misleading information regarding his case filings. Plaintiff attempted to file an emergency motion; however, his documents were mishandled and left unattended. Court staff delayed filing and refused to provide copies, stating that once documents were stamped, they became property of the court. When Plaintiff requested guidance on filing procedures, staff failed to respond or avoided further interaction. Plaintiff observed that other pro se litigants were experiencing similar issues.

### May 30, 2025 – Unlawful Detention, Search, and Retaliation

99. **It is clearly established law that an obstruction of official business charge cannot be maintained based on an individual's mere refusal to provide identification, particularly where the individual has not been involved in a crime. It is equally clearly established law that an arrest cannot be maintained without probable cause.** On May 30, 2025, Plaintiff went to the Clark County Courthouse to conduct lawful business. Plaintiff waited peacefully to speak with Defendant Alexander Chen. Without provocation, multiple officers entered and treated Plaintiff as if he were a threat. Supervising officer Sgt Spies became aggressive and confronted Plaintiff at close range. Fearing for his safety due to prior harassment, Plaintiff began recording the interaction outside the office. Officers claimed that recording was prohibited, despite public recording routinely occurring within the courthouse. Plaintiff stated his intent to leave and asked whether he was being detained. Officers confirmed he was detained and physically blocked his exit. Plaintiff was then handcuffed to a bench and detained for approximately one hour. During the detention, officers searched Plaintiff's belongings behind a separate closed door, including legal documents, despite those items having already passed through courthouse security. When Plaintiff objected, he was told to "shut up." Plaintiff was ultimately cited for obstruction and disorderly conduct and issued a trespass warning. Plaintiff complied and left peacefully. The detention, search, and citation were carried out without probable cause and in retaliation for Plaintiff's protected activity, including prior complaints and attempts to hold officials accountable.

**June 2, 2025 – Retaliation and Denial of Access to Public Facility**

100. On June 2, 2025, at approximately 9:00 a.m., Plaintiff arrived at a Clark County government building to conduct lawful business, including filing documents. Consistent with prior instructions from courthouse personnel, Plaintiff requested an escort upon arrival. Defendant Timothy Spies immediately aggressively confronted Plaintiff, entered Plaintiff's personal space, and ordered him to leave the premises. Defendant Spies further threatened Plaintiff with arrest if he did not comply. Plaintiff remained calm and advised that he had previously been instructed by courthouse personnel that an escort was required for his access to the building. Defendant D. Bly (#577), who had been present during a prior interaction in which Plaintiff was told an escort would be required, failed to intervene and instead participated in the escalation. Defendant Bly attempted to detain Plaintiff despite being aware that Plaintiff was following prior instructions. At all times, Plaintiff was calm, compliant, and engaged in lawful activity. Defendants' conduct denied Plaintiff access to a public facility, interfered with his ability to conduct legal business, and constituted retaliation for Plaintiff's prior protected activity.

**June 2–3, 2025 – Reversal of Prior Agreement and Continued Restrictions**

101. On June 2, 2025, at approximately 4:39 p.m., Plaintiff received a phone call from the Chief of Court Security. During that conversation, the Chief acknowledged Plaintiff's concerns, lifted a previously issued trespass, and advised Plaintiff that he would not be required to have an escort in the courthouse so long as he remained calm. Relying on this representation, Plaintiff returned to the courthouse on June 3, 2025, at approximately 9:45 a.m. to conduct lawful business. Upon arrival, however, the Chief of Court Security reversed his prior position and informed Plaintiff that he would, in fact, be required to have an escort while the matter was being "investigated." This directive directly contradicted the assurances provided to Plaintiff the previous day. Plaintiff requested the names and identifying information of individuals involved in prior incidents, including personnel from the District Attorney's Office and Court Marshals. These requests were not meaningfully addressed. While escorted, officers followed Plaintiff in close proximity and positioned themselves in a manner that allowed them to observe the contents of Plaintiff's documents at service windows, including information displayed on screens facing Plaintiff. This conduct intruded upon Plaintiff's privacy and interfered with his ability to conduct legal business confidentially. Upon information and belief, the reversal of the Chief's prior assurances and the manner of escort were intended to monitor Plaintiff's activities and further restrict his access to court processes.

**June 5, 2025 – Continued Obstruction and Denial of Access to Complaint Process**

102. On June 5, 2025, at approximately 2:50 p.m., Plaintiff sent a formal email to Clark County District Attorney Steve Wolfson and other senior officials regarding ongoing misconduct and what Plaintiff perceived as systemic oppression and obstruction. At approximately 3:04 p.m., Plaintiff was instructed by a supervising officer at the Clark County Courthouse to proceed to the Clark County Clerk's Office to file criminal charges against Defendants T. Spies and M. Roe. Plaintiff complied and was escorted to the Clerk's Office. Upon arrival, Clerk's Office staff advised Plaintiff that they could not accept such filings and directed him to the District Attorney's Office. Plaintiff was redirected multiple times and ultimately escorted to the District Attorney's Office. At the District Attorney's Office, Plaintiff encountered an unidentified staff member who refused to provide her name or identifying information. She represented that

she would retrieve the applicable policy governing civilian complaints against law enforcement officers. Instead of providing the requested policy, the staff member returned with an email containing a general explanation that Plaintiff had already reviewed, rather than the formal policy requested. Shortly thereafter, security personnel were called without justification, despite Plaintiff remaining calm and compliant throughout the interaction. As a result of the continued obstruction and refusal to provide clear guidance or access to appropriate processes, Plaintiff filed a Risk Management claim with Clark County. The escort assigned to Plaintiff was present for the entirety of these events. Defendants' conduct created a circular and obstructive process that effectively prevented Plaintiff from pursuing criminal complaints and obtaining meaningful access to governmental remedies. On or about June 10, 2025, Plaintiff received an email from Yoselyn Segundo of the Nevada State Bar informing him that his complaints against Amanda and Shandell Autun had been closed. Plaintiff promptly filed an appeal of that determination and submitted additional supporting evidence, including substantial documentation demonstrating the misconduct alleged in the original complaints. To this day, no follow-up has been done by NV BAR.

**103.**
**J. State Bar Complaint Process and Failure to Provide Timely Review**

104. On June 9, 2025, at approximately 2:12 p.m., Plaintiff received a phone call from Daniel Hooge of the Nevada State Bar regarding Plaintiff's pending complaints.

105. During this conversation, Hooge informed Plaintiff that he could not take any action on the complaints because the individuals involved were not licensed attorneys.

106. When Plaintiff attempted to clarify the scope of the complaint—specifically that it involved the unauthorized practice of law by non-lawyers acting under color of law—Hooge became dismissive and increasingly aggressive in tone.

107. Hooge further stated that unless Plaintiff retained and paid a licensed attorney for services, the State Bar could not assist him.

108. This statement directly contradicts publicly available guidance from the Nevada State Bar, which expressly invites complaints regarding the unauthorized practice of law by non-lawyers and provides a formal complaint process for such matters.

109. As a result of this interaction, Plaintiff filed additional complaints against Daniel Hooge, Yoselyn Segundo, and Phillip Pattee for failure to properly investigate and address the reported misconduct.

110. This incident further demonstrates a pattern of obstruction and misinformation that hindered Plaintiff's ability to pursue remedies through official channels.

111. Plaintiff submitted formal complaints to the Nevada State Bar regarding the unauthorized practice of law by LVMPD Risk Management personnel, including Amanda Sang and Shandell Auten.

112. These complaints included allegations that said individuals, while acting under color of law, provided legal guidance, interpreted liability, and interfered with Plaintiff's ability to pursue lawful claims despite not being licensed attorneys.

113. Plaintiff further submitted audio and video evidence supporting these allegations.

114. On July 28, 2025, Plaintiff received written confirmation from the State Bar that the matters were being reassigned to a second Assistant Bar Counsel for reconsideration and review.

115. The State Bar represented that the reconsideration process could take up to sixty (60) days depending on complexity and workload.

116. Despite this representation, Plaintiff did not receive any substantive update, determination, or communication regarding the outcome of the reconsideration within the stated timeframe.

117. As of April 2, 2026, more than nine (9) months had elapsed without resolution or meaningful status update.

118. Plaintiff sent a formal follow-up inquiry requesting confirmation of the status of the reconsideration, identification of assigned counsel, and an estimated timeline for resolution.

119. The failure to provide a timely response or meaningful update, combined with prior dismissal of the complaints despite submitted evidence, contributed to Plaintiff's inability to obtain accountability through available administrative channels.

120. This conduct further reflects a pattern in which Plaintiff's attempts to seek redress through official complaint mechanisms were delayed, ignored, or obstructed.

121. Plaintiff incorporates these facts as part of the broader pattern of interference with his ability to seek remedies and pursue accountability against individuals acting under color of law.

A. **June 13, 2025 – Retaliation Following Attempt to File Criminal Complaint**

B. On June 13, 2025, at approximately 11:00 a.m., Plaintiff spoke with courthouse personnel, including an individual identified as " Marshal Black" at the Clark County Courts, regarding how to initiate criminal charges against law enforcement officers.

C. Plaintiff was directed to the Las Vegas Metropolitan Police Department (LVMPD) to initiate the complaint. Clark County Human Resources personnel provided similar instructions after initially suggesting the District Attorney's Office. At approximately 11:25 a.m., Plaintiff arrived at LVMPD Headquarters as instructed and requested information on how to file criminal charges against the involved officers. An LVMPD officer provided Plaintiff with a complaint form and an event number, indicating that the matter would be processed accordingly. At approximately 1:30 p.m., the same officer contacted Plaintiff and stated that the submitted criminal complaint would instead be treated as a standard administrative complaint, directly contradicting the representations made to Plaintiff in person. At approximately 2:30 p.m., Plaintiff arrived at the Convention Center Area Command police station to follow up. Upon arrival, officers became immediately hostile and confrontational. A supervising sergeant questioned Plaintiff in an aggressive manner regarding how he had arrived at the station. Shortly after Plaintiff left the station, he was subjected to a traffic stop initiated by LVMPD officers within minutes of his departure. Upon information and belief, this stop was conducted in retaliation for Plaintiff's attempts to file criminal complaints against LVMPD personnel and to exercise his First Amendment right to petition for redress of grievances. During this encounter, under the direction of Sgt. Pascoe, officers removed Plaintiff's legally possessed firearm from his vehicle. While Plaintiff was handcuffed and facing away from his vehicle, officers dismantled the firearm without justification. Plaintiff was issued three citations during this encounter, all of which were subsequently dismissed when the issuing officers failed to appear in court. During the related court proceedings, the prosecuting attorney urged Plaintiff not to address the court; however, Plaintiff exercised his right to speak on the record. The totality of these actions constitutes retaliatory enforcement, abuse of authority, and interference with Plaintiff's constitutional rights.

**K. Formal Notice of Constitutional Violations and Immediate Change in Enforcement**

122. On July 8, 2025, Plaintiff issued a written "Notice of Formal Civil Rights Protest & Demand for Immediate Relief" to Clark County Court Marshal supervisory personnel, including Sgt. Black and Sgt. Pastorious.

123. In this notice, Plaintiff detailed ongoing constitutional violations arising from the imposition of a mandatory escort requirement within the courthouse, including unlawful detention, restriction of movement, and interference with Plaintiff's ability to access the courts.

124. Plaintiff specifically identified violations of his First Amendment (retaliation and interference with petitioning activity), Fourth Amendment (unlawful detention and search), and Fourteenth Amendment (denial of due process and equal protection) rights.

125. Plaintiff further demanded that Defendants either (a) immediately terminate the escort restriction and allow unrestricted access to the courthouse, or (b) formally arrest him and bring him before a magistrate judge so that the legality of any alleged trespass or restriction could be adjudicated.

126. The notice explicitly warned that continued enforcement of the escort without lawful authority would constitute knowing and intentional constitutional violations and would be incorporated into Plaintiff's federal civil rights litigation.

127. Upon receipt and review of this notice, Defendants immediately ceased enforcement of the escort requirement. The abrupt termination of the escort policy following Plaintiff's formal legal notice demonstrates that the prior restriction lacked a lawful basis and was not supported by any valid court order, written trespass, or due process proceeding.

128. This sequence of events further supports Plaintiff's claim that the escort requirement was imposed arbitrarily and in retaliation for Plaintiff's protected activity, rather than pursuant to any legitimate or lawful justification.

### L. Trial Misconduct, Evidence Suppression, and Fabrication of Evidence

129. Plaintiff's underlying criminal case proceeded to trial in the Las Vegas Municipal Court before Judge Matthew Walker, with prosecution conducted by Bobby Anderlik and Julia Watson.

130. Prior to trial, the citation issued to Plaintiff was materially incomplete and lacked essential information, including the time, date, and location of the alleged offense.

131. At trial, however, prosecutors Bobby Anderlik and Julia Watson presented a different version of the same citation that had been altered to include previously missing information.

132. This altered citation was introduced without prior disclosure to Plaintiff and materially changed the factual basis of the charges.

133. Prosecutors Anderlik and Watson represented to the court that their version of the citation contained the required information, despite the original citation provided to Plaintiff lacking those details.

134. The alteration and use of a modified charging document deprived Plaintiff of fair notice of the accusations against him and impaired his ability to prepare an adequate defense.

135. At the outset of trial, Plaintiff was denied a meaningful opportunity to deliver an opening statement, while the prosecution was permitted to proceed with its presentation of the case.

136. Plaintiff was thereby deprived of the opportunity to outline his defense, frame the evidence, and present his theory of the case to the trier of fact.

137. Following the proceedings, official court records failed to reflect any opening statement by Plaintiff, and court personnel later acknowledged that the records provided were not "true and complete."

138. This discrepancy further demonstrates that either Plaintiff's opening statement was improperly denied, restricted, or omitted from the official record.

139. During trial, law enforcement officers provided testimony that was inconsistent with prior statements and the objective evidence.

140. Plaintiff questioned an officer regarding whether the encounter was consensual. During this line of questioning, Judge Matthew Walker intervened and inserted himself into Plaintiff's examination.

141. Judge Walker's intervention had the effect of reframing and influencing the officer's testimony in real time, limiting Plaintiff's ability to challenge credibility and present his defense.

142. Additionally, critical video evidence was not disclosed to Plaintiff prior to trial.

143. During proceedings, prosecutors Anderlik and Watson referenced the existence of a longer video recording—approximately fifty-nine (59) minutes in duration—that had not been previously produced in discovery.

144. This video evidence was only revealed after Plaintiff subpoenaed it, despite being directly relevant and material to the case.

145. The failure of prosecutors Anderlik and Watson to disclose this evidence prior to trial constitutes suppression of material evidence in violation of Plaintiff's due process rights.

146. Plaintiff was provided court minutes that lacked standard identifying features and omitted key portions of the proceedings.

147. Court administration personnel (Pamela Jefferson & Hans Jessup) acknowledged that the records provided to Plaintiff were not "true and complete."

148. The absence and alteration of official court records impaired Plaintiff's ability to pursue appellate relief and challenge the legality of the proceedings.

149. The cumulative conduct of Judge Matthew Walker, prosecutors Bobby Anderlik and Julia Watson, and involved officers—including denial of a meaningful opportunity to present an opening statement, use of altered documents, suppression of evidence, judicial interference, and incomplete records—deprived Plaintiff of a fair and impartial trial.

150. These actions were taken under color of law and resulted in violations of Plaintiff's constitutional rights, including his right to due process and a fair trial under the Fourteenth Amendment.

### M. Obstruction of Complaint Process by Terrence McCarthy (Assistant Administrative HR Director)

151. On or about February 4, 2026, Plaintiff met with Terrence McCarthy, identified as an Assistant Administrative Human Resources Director for the Eighth Judicial District Court. Plaintiff sought confirmation regarding the status, handling, and processing of multiple formal complaints previously submitted concerning alleged misconduct, criminal violations, and civil rights violations by court marshal personnel. During this interaction, McCarthy falsely represented that the complaint form utilized by Plaintiff was not an official complaint mechanism, but merely a "customer service form." Plaintiff immediately challenged this assertion and demonstrated that the form expressly allowed for written allegations, including on the reverse side, contradicting McCarthy's representation. McCarthy further stated

that there was no mechanism for Plaintiff to provide additional information or narrative regarding his complaints, despite the form clearly permitting such submissions. McCarthy also informed Plaintiff that all of his complaints had been closed and that no misconduct or violations had been found, without providing any documentation, investigative findings, or explanation of the review process. When Plaintiff requested information regarding the handling, escalation, and investigation of his complaints, McCarthy stated that complaints alleging misconduct were not required to be brought to his attention immediately, directly contradicting established policies governing complaint intake and review. McCarthy further asserted that Plaintiff was not entitled to any updates, correspondence, or status information regarding his complaints, effectively denying Plaintiff transparency and access to the complaint process. During the interaction, McCarthy attempted to characterize Plaintiff as disruptive and unreasonable when Plaintiff continued to seek clarification, thereby attempting to discredit Plaintiff rather than address the substance of the complaints. McCarthy also represented that ONLY marshals could file complaints against other marshals, a statement that is false and inconsistent with publicly available policies permitting civilian complaints of misconduct. These misrepresentations had the effect of discouraging, delaying, and obstructing Plaintiff's ability to pursue formal complaints and obtain accountability for alleged misconduct. Plaintiff reasonably relied on McCarthy's position of authority and representations, which created confusion regarding the proper procedures for submitting and pursuing complaints. McCarthy's conduct was not isolated but part of a broader pattern in which Plaintiff was repeatedly provided inaccurate or misleading information by officials across multiple departments. By providing false information regarding the existence, validity, and processing of complaint mechanisms, McCarthy interfered with Plaintiff's First Amendment right to petition for redress of grievances. McCarthy's actions also contributed to the denial of Plaintiff's Fourteenth Amendment rights by obstructing access to available administrative remedies and depriving Plaintiff of a meaningful opportunity to be heard. The totality of McCarthy's conduct demonstrates deliberate indifference to Plaintiff's rights and constitutes obstruction under color of law.

### N. Supervisory Liability and Policy-Level Conduct of Chief Marshal Newsome

152. At all relevant times, Defendant Chief Newsome served as a supervisory official within the Clark County Court Marshal Service, with authority over marshal operations, policies, training, and the intake and handling of complaints against marshal personnel.

153. Chief Newsome was responsible for ensuring that marshal personnel complied with constitutional requirements, including respecting the public's rights to access the courts, record law enforcement activity, and petition for redress of grievances.

154. Plaintiff submitted multiple formal complaints alleging misconduct, unlawful detention, retaliation, and obstruction by court marshal personnel operating under Newsome's command.

155. Despite the seriousness of these allegations and the existence of supporting evidence, Plaintiff did not receive timely confirmation that a formal investigation had been opened, nor was he provided with the identity of any assigned investigator or the status of any review.

156. Upon information and belief, these complaints were either ignored, improperly closed, or not meaningfully investigated.

157. The failure to respond to or investigate Plaintiff's complaints allowed unconstitutional conduct by subordinate marshals—including unlawful detention, retaliatory restrictions, and interference with court access—to continue without correction.

158. Chief Newsome knew or reasonably should have known that Plaintiff was being subjected to repeated constitutional violations, including forced escort conditions, denial of access to court processes, and retaliatory enforcement actions.

159. Despite this knowledge, Chief Newsome failed to take corrective action. discipline involved personnel or ensure that Plaintiff's rights were protected.

160. The continuation of these practices, including the imposition of escort restrictions without written orders or due process, reflects either the existence of an official policy or a longstanding custom within the marshal service.

161. Plaintiff's experience demonstrates that marshals acted with the understanding that their conduct would not be meaningfully reviewed or disciplined. indicating tacit approval or deliberate indifference at the supervisory level.

162. Chief Newsome's failure to properly train, supervise, and discipline marshal personnel contributed directly to the violations of Plaintiff's constitutional rights.

163. This failure constitutes deliberate indifference to the rights of individuals interacting with the court system, including Plaintiff.

164. The conduct described herein was carried out under color of law and resulted in violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

165. Chief Newsome is liable in his individual capacity for his supervisory role in permitting these violations, and in his official capacity for maintaining policies or customs that enabled such conduct.


## O. Municipal and Governmental Liability (State, County, and City Defendants)

166. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

167. The constitutional violations described in this Complaint were not isolated incidents, but were the result of systemic failures, policies, customs, and practices maintained by State, County, and City entities.


## State of Nevada – Declaratory and Injunctive Role

168. The State of Nevada, through its agencies and oversight bodies, is responsible for establishing and enforcing standards governing courts, law enforcement conduct, and the administration of justice.

169. Plaintiff sought relief through multiple state-level channels, including the Nevada Attorney General's Office and the Nevada State Bar, regarding misconduct and constitutional violations.

170. Despite receiving formal complaints supported by evidence, these entities failed to provide timely or meaningful intervention, thereby allowing ongoing violations to continue unchecked.

171. Plaintiff seeks declaratory and injunctive relief against the State of Nevada to ensure that constitutionally compliant procedures are enforced and that individuals are not denied access to remedies.

### P.    Clark County – Marshal System and Courthouse Operations

172. Defendant Clark County is responsible for the operation, supervision, and policy-making of the Court Marshal Service and courthouse administrative functions.

173. Under Clark County's authority, marshal personnel engaged in repeated unlawful conduct, including:

    a. Imposing escort restrictions without written orders or due process;

    b. Denying Plaintiff access to court services and complaint mechanisms;

    c. Failing to provide identifying information upon request;

    d. Engaging in retaliatory conduct in response to Plaintiff's protected activity.

174. Clark County, through its policymakers, including supervisory officials, maintained policies or customs that permitted such conduct to occur.

175. Plaintiff's repeated complaints to County departments—including Human Resources, Public Safety, and Risk Management—were met with misinformation, delay, or outright refusal to process claims.

176. These failures demonstrate a policy or custom of obstructing complaints and shielding personnel from accountability.

177. Clark County failed to adequately train and supervise its employees regarding constitutional obligations, including the rights of individuals to access courts and file complaints.

178. As a direct result of these policies and failures, Plaintiff suffered violations of his First, Fourth, and Fourteenth Amendment rights.

### City of Las Vegas – Municipal Court and Prosecutorial Practices

179. Defendant City of Las Vegas is responsible for the operation of the Las Vegas Municipal Court and the conduct of its prosecutors.

180. During Plaintiff's criminal proceedings, City actors engaged in conduct that deprived Plaintiff of a fair trial, including:

    a. Presentation of an altered citation without prior disclosure;

    b. Failure to disclose material video evidence prior to trial;

    c. Allowing or facilitating incomplete and inaccurate court records;

    d. Permitting judicial interference that impacted Plaintiff's ability to present a defense.

181. These actions reflect either official policies or a pattern of practices that tolerate or encourage constitutional violations.

182. The City failed to ensure that its prosecutors complied with disclosure obligations and due process requirements.

183. As a result, Plaintiff was subjected to a fundamentally unfair proceeding in violation of his constitutional rights.

**. Las Vegas Metropolitan Police Department (LVMPD)**

184. LVMPD, acting under authority shared between the City of Las Vegas and Clark County, engaged in a pattern of retaliatory and unlawful conduct toward Plaintiff.

185. This conduct included:

    a. Retaliatory traffic stops shortly after Plaintiff attempted to file criminal complaints;

    b. Seizure and destruction or dismantling of Plaintiff's lawfully possessed firearm without justification;

    c. Issuance of citations that were later dismissed when officers failed to appear;

    d. Obstruction of Plaintiff's right to record law enforcement activity;

    e. Providing misleading or contradictory information regarding complaint and claim procedures.

186. LVMPD personnel acted with the understanding that their conduct would not be meaningfully investigated or disciplined.

187. Plaintiff's repeated attempts to file Internal Affairs complaints and Risk Management claims were met with obstruction, delay, and misinformation.

188. These actions reflect a policy, custom, or practice of retaliating against individuals who attempt to hold law enforcement accountable.

189. LVMPD failed to properly train, supervise, and discipline its officers regarding constitutional limitations on their authority.

190. As a direct result of these failures, Plaintiff suffered violations of his constitutional rights, including unlawful seizure, retaliation, and denial of access to remedies.

**Pattern and Practice of Systemic Obstruction**

191. Across State, County, and City entities, Plaintiff encountered a consistent pattern of:

    a. Being redirected between agencies without resolution;

    b. Receiving contradictory or false information regarding complaint procedures;

    c. Being denied access to supervisors or decision-makers;

    d. Experiencing escalation to security or law enforcement despite lawful conduct;

    e. Having complaints ignored, closed without explanation, or not processed.

192. This pattern demonstrates a coordinated or systemic failure to provide meaningful access to complaint processes and legal remedies.

193. Plaintiff's experience reflects a de facto policy of discouraging, delaying, and obstructing complaints against government officials.

194. The cumulative effect of these policies and practices deprived Plaintiff of his constitutional rights, including: The right to petition the government for redress of grievances (First Amendment) The right to be free from unreasonable seizures (Fourth Amendment); The right to due process and equal protection (Fourteenth Amendment).

195. These violations were the foreseeable result of deliberate indifference by policymakers at the State, County, and City levels.

**Violations of Nevada Law, Local Court Rules, and Governing Policies**

196. In addition to the federal constitutional violations alleged herein, Defendants' conduct violated Nevada statutes, local court directives, and governing ethical and administrative rules, which further demonstrate the unlawfulness, arbitrariness, and retaliatory nature of the acts complained of.

197. Defendants interfered with Plaintiff's lawful recording of law-enforcement activity in violation of **NRS 171.1233**, which protects the right of a person who is not under arrest or in custody to record law-enforcement activity and prohibits peace officers from intentionally interfering with such recording. (Nevada Legislature    )

198. Defendants detained Plaintiff and restricted his movement without lawful basis, contrary to **NRS 171.1231**, which requires release where probable cause does not appear and authorizes arrest only where probable cause exists. (Nevada Legislature    )

199. Defendants cited and threatened Plaintiff for "obstruction" even though the underlying commands, restrictions, and detentions were not lawfully grounded, contrary to **NRS 197.190**, which presupposes lawful performance of official duties. (Nevada Legislature    )

200. To the extent Defendants used official authority to intimidate, restrain, misdirect, or oppress Plaintiff without lawful cause, such conduct further constitutes **oppression under color of office** within the meaning of **NRS 197.200**. (Nevada Legislature    )

201. Defendants imposed and enforced trespass and escort-related restrictions without a valid written order, without meaningful process, and without the predicate disruptive conduct required by the governing courthouse framework, contrary to **NRS 207.200** and the Eighth Judicial District Court's own **Administrative Order 25-05**. That Order requires specific disruptive conduct and procedural steps before courthouse exclusion measures are imposed. (Nevada Legislature    )

202. Defendants' seizure, continued retention, and interference with the return of Plaintiff's lawfully possessed firearm violated Nevada law, including **NRS 41.0395**, which provides a civil remedy when a firearm is unlawfully confiscated by a State or political subdivision actor. (Nevada Legislature    )

203. Court staff and administrative personnel further violated governing Nevada standards requiring fairness, respect, accurate record maintenance, and proper handling of court-user interactions. The Nevada Model Code of Conduct for Court Professionals requires court employees to act fairly, respect court users, properly maintain records, report misconduct, and avoid impropriety.

204. Defendants Hans Jessup, Pamela Jefferson, Terrence McCarthy, and other court-administration personnel acted contrary to those duties by providing inaccurate or misleading procedural information, failing to maintain or provide true and complete records, and obstructing Plaintiff's efforts to obtain review, accountability, and access to court processes.

205. These Nevada-law, administrative-order, and policy violations do not merely establish technical noncompliance; they provide further evidence that Defendants acted without lawful authority, outside governing procedures, and in deliberate disregard of Plaintiff's rights.

### Q Malicious Prosecution and Retaliatory Prosecution (Fourth and Fourteenth Amendments)

206. Defendants, including LVMPD officers and City of Las Vegas prosecutors, initiated and continued criminal proceedings against Plaintiff without probable cause.

207. The prosecution was not based on legitimate law enforcement objectives, but rather in retaliation for Plaintiff's protected First Amendment activity, including recording police and filing complaints. The charges brought against Plaintiff were based on fabricated, altered, and incomplete evidence, including a materially altered citation and suppressed video evidence. Defendants acted with malice and for the purpose of depriving Plaintiff of his constitutional rights. Plaintiff was seized, detained, and subjected to criminal prosecution as a result of this unlawful conduct. The criminal proceedings remain under active appeal, and Plaintiff expressly reserves all rights to seek damages upon favorable termination of those proceedings. Plaintiff brings this claim to challenge the unlawful initiation and continuation of prosecution, as well as the constitutional violations that occurred during that process. Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### R. Due Process Violations – Fabrication of Evidence, Suppression, and Unfair Trial

208. Defendants deprived Plaintiff of his right to a fair trial through a series of coordinated actions, including:

    a. Presentation of a materially altered charging document;

    b. Suppression of exculpatory video evidence;

    c. Use of testimony known to be false or misleading;

    d. Judicial interference with Plaintiff's ability to examine witnesses;

    e. Failure to maintain accurate and complete court records.

209. These actions undermined the integrity of the proceedings and deprived Plaintiff of due process of law.

210. Plaintiff's conviction is currently under appeal, and Plaintiff challenges the constitutionality of the procedures and conduct that led to that conviction.

211. Plaintiff seeks declaratory and injunctive relief regarding these constitutional violations and reserves the right to seek damages upon favorable termination of the underlying proceedin

### S. Unlawful Fee Manipulation and Obstruction of Public Records – Defendant Sgt. Walsh

212. On or about September 2025, Plaintiff requested body-worn camera footage from the Las Vegas Metropolitan Police Department (LVMPD) related to incidents forming the basis of this action.

213. Defendant Sgt. Walsh, acting under color of law and within the scope of his authority as an LVMPD supervisor, provided Plaintiff with pricing information for the requested records.

214. Sgt. Walsh initially represented that the standard cost for production of the requested body camera footage was approximately $200, with an estimated production timeline of several months.

215. Sgt. Walsh then informed Plaintiff that if Plaintiff paid an additional fee—exceeding $100 above the stated standard price—the same records could be produced within approximately thirty (30) days.

216. This representation demonstrates that the timeline for production was not based on legitimate resource constraints, but rather on Plaintiff's willingness to pay an inflated fee.

217. Upon information and belief, the expedited production was not tied to any legitimate statutory or policy-based fee structure, but instead constituted an arbitrary and unauthorized pricing scheme.

218. The conditioning of timely access to public records on payment of an inflated or discretionary fee constitutes an unlawful barrier to access and interferes with Plaintiff's ability to obtain evidence necessary to pursue legal claims.

219. Defendant Walsh's conduct was not an isolated incident, but reflects a broader pattern within LVMPD of manipulating public records access through inconsistent and arbitrary fee demands.

220. Such conduct undermines the purpose of Nevada public records laws, which are intended to ensure transparency and access to government records.

221. By imposing inflated and discretionary fees for expedited access—while simultaneously acknowledging that earlier production was possible—Defendant Walsh engaged in conduct that was arbitrary, capricious, and retaliatory in nature.

222. This conduct interfered with Plaintiff's First Amendment right to access information necessary to petition the government for redress of grievances.

223. Additionally, the arbitrary imposition of inconsistent fees without clear standards or due process violated Plaintiff's rights under the Fourteenth Amendment.

224. Defendant Walsh's actions were taken under color of law and contributed to the broader pattern of obstruction, retaliation, and denial of access to remedies described throughout this Complaint.

### COUNT I – FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

(Against Individual Defendants and Municipal Defendants)

223. Plaintiff incorporates all preceding paragraphs.

224. Plaintiff engaged in constitutionally protected activity, including recording law enforcement, filing complaints, submitting claims, attempting to initiate criminal complaints, and communicating with oversight agencies.

225. Defendants, including but not limited to M. Roe, Officer #17158 ("Patches"), Sgt. Pascoe, Sgt. Walsh, Timothy Spies, D. Bly, Adam Paige, Garrick Strong, R. Taylor, Lt. Tisino, Alexander Chen, Jamie Honaker, Bobby Anderlik, and Julia Watson, were aware of Plaintiff's protected activity.

226. In response, Defendants took adverse actions, including unlawful detention, threats of arrest, initiation of criminal proceedings, imposition of escort restrictions, obstruction of complaint processes, retaliatory traffic stops, seizure of property, interference with recording, and manipulation of public records access.

227. A substantial or motivating factor for Defendants' actions was Plaintiff's protected conduct.

228. Defendants' actions would chill a person of ordinary firmness from continuing to engage in protected activity.

229. As a direct and proximate result, Plaintiff suffered constitutional injury.

230. These actions were undertaken pursuant to policies, customs, or practices of the municipal Defendants, reflecting deliberate indifference to Plaintiff's rights.

231. Defendants violated Plaintiff's First Amendment rights.

### COUNT II – FOURTH AMENDMENT UNLAWFUL SEIZURE AND DETENTION

(Against LVMPD Officers and Court Marshal Defendants Personally Involved)

232. Plaintiff incorporates all preceding paragraphs.

233. Defendants, including Sgt. Pascoe, Sgt. Walsh, Timothy Spies, D. Bly, Adam Paige, Garrick Strong, R. Taylor, Lt. Tisino, and other officers who personally participated, detained Plaintiff.

234. These detentions included:
(a) May 30, 2025 courthouse detention;
(b) June 2, 2025 removal and threat of arrest;
(c) Retaliatory traffic stop;
(d) Escort-based restrictions restricting freedom of movement.

235. Plaintiff was not engaged in criminal conduct.

236. Defendants lacked reasonable suspicion or probable cause.

237. The seizures were unreasonable under the Fourth Amendment.

238. Plaintiff suffered deprivation of liberty and damages as a result.

## COUNT III – FOURTH AMENDMENT UNLAWFUL SEARCH AND SEIZURE OF PROPERTY

(SGT Pascoe, LVMPD & other Defendants Directly Involved in Firearm Seizure)

239. Plaintiff incorporates all preceding paragraphs.

240. Defendants, including LVMPD officers and any individuals directly involved in the seizure and retention of Plaintiff's firearm, seized Plaintiff's property.

241. Defendants:
(a) Seized and retained the firearm without lawful justification;
(b) Attempted or conducted searches without a warrant;
(c) Dismantled the firearm while Plaintiff was detained.

242. Plaintiff did not consent.

243. No warrant or exception applied.

244. The conduct was unreasonable.

245. Plaintiff suffered constitutional injury and property loss.

## COUNT IV – FOURTEENTH AMENDMENT DUE PROCESS (FAIR TRIAL)

(Against Prosecutors and Officers; Against Judge Walker for Declaratory Relief Only)

246. Plaintiff incorporates all preceding paragraphs.

247. Defendants, including Bobby Anderlik, Julia Watson, Jamie Honaker, and involved officers, deprived Plaintiff of a fair trial by:

(a) Presenting an altered charging document;
(b) Suppressing exculpatory evidence;
(c) Using false or misleading testimony;
(d) Interfering with witness examination;
(e) Denying a meaningful opportunity to present a defense;
(f) Maintaining incomplete or inaccurate court records.

248. Defendants acted in investigatory and administrative capacities, including fabrication and suppression of evidence prior to trial, outside protected prosecutorial advocacy.

249. The suppressed evidence was material.

250. Plaintiff's conviction is under appeal.

251. Plaintiff seeks declaratory and prospective relief and reserves damages upon favorable termination.

252. Defendant Judge Matthew Walker is named for declaratory relief only.

253. Defendants violated Plaintiff's Fourteenth Amendment rights.

---

## COUNT V – MALICIOUS PROSECUTION

(Fourth and Fourteenth Amendments – Against Officers Who Initiated or Caused the Proceedings, and Against Prosecutorial Defendants Only to the Extent They Acted in an Investigatory or Administrative Capacity Outside Protected Advocacy)

254. Plaintiff incorporates all preceding paragraphs.

255. Defendants, including the officers who initiated, procured, or materially caused the criminal proceedings against Plaintiff, and any prosecutorial defendants who participated in fabrication, suppression, or other investigatory or administrative misconduct outside protected prosecutorial advocacy, initiated and continued criminal proceedings against Plaintiff.

256. The criminal proceedings were initiated and continued:

(a) Without probable cause;

(b) On the basis of fabricated, altered, incomplete, or misleading evidence;

(c) In retaliation for Plaintiff's protected First Amendment activity, including recording police and filing complaints.

257. Plaintiff was seized, detained, and subjected to criminal prosecution as a direct result of this conduct.

258. Plaintiff alleges that the officers involved set the prosecution in motion by supplying false, altered, incomplete, or misleading information and/or by omitting material exculpatory facts.

259. Plaintiff further alleges that any prosecutorial defendants named under this Count are sued only to the extent they acted outside the core advocacy function, including investigatory or administrative misconduct such as fabrication of evidence, suppression of material evidence prior to trial, or participation in maintaining a false factual theory.

260. The criminal proceedings remain under active appeal, and Plaintiff therefore seeks declaratory and prospective relief at this time and expressly reserves any claim for damages dependent on favorable termination.

261. Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments.

---

## COUNT VI – DENIAL OF ACCESS TO COURTS

(Against Defendants Personally Involved in Obstruction)

262. Plaintiff incorporates all preceding paragraphs.

263. Defendants obstructed Plaintiff's ability to access courts and remedies by:

(a) Blocking complaint filings;
(b) Providing false procedures;
(c) Redirecting Plaintiff between agencies;
(d) Withholding records and identifying information;
(e) Imposing unlawful escort restrictions;
(f) Intimidating Plaintiff.

263. These actions caused actual injury, including delay in filing claims, inability to timely pursue remedies, and impairment of Plaintiff's ability to present claims and evidence.

264. The conduct was intentional and retaliatory.

265. Defendants violated Plaintiff's First and Fourteenth Amendment rights.

## COUNT VII – MONELL LIABILITY

(Against Clark County, City of Las Vegas, LVMPD, Clark County DA's Office)

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)

266. Plaintiff incorporates all preceding paragraphs.

267. The violations were caused by policies, customs, or practices of municipal Defendants.

268. These included failure to train, failure to supervise, retaliatory customs, and systemic obstruction.

269. These policies amounted to deliberate indifference.

270. They were the moving force behind the violations.

271. Municipal Defendants are liable under §1983.

The conduct described herein was not isolated, but reflects a systemic breakdown in constitutional safeguards across multiple agencies, where individuals acting under color of law engaged in coordinated or mutually reinforcing actions that deprived Plaintiff of fundamental rights, discouraged accountability, and undermined public confidence in the integrity of the justice system.

## COUNT VIII – FAILURE TO SUPERVISE

(Against Named Supervisors Only)

272. Plaintiff incorporates all preceding paragraphs.

273. Defendants Sgt. Pascoe, Chief Marshal Newsome, Chief James Rogers, Lt. Tisino, Sgt. Timothy Spies, and Terrence McCarthy knew or should have known of ongoing misconduct.

274. They failed to investigate, discipline, or correct violations.

275. This demonstrated deliberate indifference.

276. Their failures caused continued violations.

## COUNT IX – EQUAL PROTECTION

277. Plaintiff incorporates all preceding paragraphs.

278. Plaintiff was treated differently from similarly situated individuals who engaged in similar conduct but were not subjected to detention, escort restrictions, or enforcement.

279. Plaintiff was singled out for enforcement and denied access to complaint processes.

280. There was no rational basis.

281. The conduct was retaliatory and motivated by animus.

282. Defendants violated Plaintiff's Fourteenth Amendment rights.

## COUNT X – FIRST AMENDMENT (PUBLIC RECORDS OBSTRUCTION)

(Against Sgt. Walsh, LVMPD, Clark County)

283. Plaintiff incorporates all preceding paragraphs.

284. Defendant Walsh imposed arbitrary and inflated fees.

285. Timely access was conditioned on additional payment.

286. This interfered with Plaintiff's ability to pursue legal claims.

287. The conduct was arbitrary, retaliatory, and lacked due process.

288. Defendants violated Plaintiff's First and Fourteenth Amendment rights. The Clark County Eighth Judicial Court refused to release a 59-minute-long video until the plaintiff subpoenaed it.

## COUNT XI – FALSE ARREST / FALSE IMPRISONMENT (NEVADA LAW)

(Against Chief Newsome & all Individual Officers Personally Involved, Clark County, City of Las Vegas)

289. Plaintiff incorporates all preceding paragraphs.

290. Defendants intentionally detained Plaintiff without lawful privilege.

291. Plaintiff was aware of and did not consent to the detention.

292. The detention was not supported by probable cause or lawful authority.

293. The confinement was unreasonable in duration and manner.

294. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, and damages.

295. Defendants are liable for false arrest and false imprisonment under Nevada law.

## COUNT XII – ABUSE OF PROCESS (NEVADA LAW)

(Against Officers and Prosecutorial Defendants Acting Outside Advocacy Role)

296. Plaintiff incorporates all preceding paragraphs.

297. Defendants used legal process against Plaintiff for an ulterior purpose.

298. The process was used not to achieve a lawful objective, but to retaliate against Plaintiff and deter protected activity.

299. Defendants committed willful acts in the use of process that were not proper in the regular conduct of proceedings.

300. As a result, Plaintiff suffered damages.

301. Defendants are liable for abuse of process under Nevada law.

## COUNT XIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

(Against All Individual Defendants Personally Involved)

302. Plaintiff incorporates all preceding paragraphs.

303. Defendants engaged in extreme and outrageous conduct, including unlawful detention, threats, retaliation, obstruction, and misuse of authority.

304. Defendants acted intentionally or with reckless disregard for the probability of causing emotional distress.

305. Plaintiff suffered severe emotional distress as a result.

306. Defendants' conduct exceeds all bounds tolerated in a civilized society.

307. Defendants are liable for intentional infliction of emotional distress under Nevada law.

## COUNT XIV – NEGLIGENT SUPERVISION / TRAINING (NEVADA LAW)

(Against Clark County, City of Las Vegas, LVMPD)

308. Plaintiff incorporates all preceding paragraphs.

309. Municipal Defendants had a duty to properly train, supervise, and control their employees.

310. Defendants breached this duty by failing to adequately supervise, discipline, and train personnel.

311. Defendants knew or should have known of the risk of constitutional violations.

312. This failure created a foreseeable risk of harm.

313. Plaintiff suffered damages as a result.

314. Defendants are liable for negligent supervision and training under Nevada law.

## COUNT XV – NEVADA PUBLIC RECORDS VIOLATION

(NRS Chapter 239 – Against LVMPD and Sgt. Walsh)

315. Plaintiff incorporates all preceding paragraphs.

316. Plaintiff requested public records pursuant to Nevada law.

317. Defendants imposed arbitrary and excessive fees and conditions on access.

318. These actions interfered with Plaintiff's right to inspect and obtain public records.

319. Defendants' conduct was inconsistent with Nevada public records law requiring reasonable access.

320. Plaintiff suffered harm as a result.

321. Defendants are liable under Nevada law governing public records.

### COUNT XVI – OPPRESSION UNDER COLOR OF OFFICE (NRS 197.200)

(Against Individual Defendants)

322. Plaintiff incorporates all preceding paragraphs.

323. Defendants, acting under color of law, intentionally subjected Plaintiff to unlawful detention, obstruction, intimidation, and misuse of authority.

324. Defendants acted knowingly and willfully without lawful justification.

325. This conduct constitutes oppression under color of office under Nevada law.

326. Plaintiff suffered damages as a result.

### COUNT XVII – CIVIL BATTERY (NEVADA LAW)

(Against LVMPD Officers and Clark County Court Marshals Personally Involved)

327. Plaintiff incorporates all preceding paragraphs.

328. Defendants, including LVMPD officers involved in the retaliatory traffic stop and Clark County Court Marshals involved in the May 30, 2025 courthouse detention, intentionally used force against Plaintiff.

329. This force included, but was not limited to:

(a) Handcuffing Plaintiff during a retaliatory traffic stop without lawful justification;

(b) Physically restraining Plaintiff and securing him to a bench during courthouse detention;

(c) Maintaining Plaintiff in handcuffs for an extended period of time without lawful basis.

330. At all relevant times, Plaintiff was not resisting, was compliant, and did not pose a threat.

331. The use of force was not reasonably necessary under the circumstances.

332. The underlying detentions were not supported by probable cause or lawful authority.

333. As a result, the force used against Plaintiff was willful, unlawful, and without legal justification.

334. Defendants knew or reasonably should have known that their conduct was unlawful.

335. As a direct and proximate result, Plaintiff suffered physical restraint, loss of liberty, emotional distress, and damages.

336. Defendants are liable for civil battery under Nevada law.

*COUNT XVIII – FOURTEENTH AMENDMENT DUE PROCESS (BRADY VIOLATION)*

*(Against Prosecutorial Defendants and Any Officers Who Participated in Suppression)*

Plaintiff incorporates all preceding paragraphs.

Defendants, including but not limited to Bobby Anderlik and Julia Watson, violated Plaintiff's rights under the Fourteenth Amendment by suppressing material exculpatory evidence in violation of clearly established law.

Specifically: (a) Defendants were aware of the existence of a video recording approximately fifty-nine (59) minutes in duration documenting the events underlying Plaintiff's criminal case;

(b) This video constituted material evidence favorable to the defense, including impeachment evidence and evidence directly relevant to the legality of Plaintiff's detention and the factual basis of the charges;

(c) Defendants failed to disclose this video to Plaintiff prior to trial;

(d) Defendants affirmatively represented to the Court that all relevant discovery had been produced, despite knowing that the 59-minute video had not been disclosed;

(e) Plaintiff only obtained this critical evidence after issuing a subpoena, well after the prosecution had already relied on incomplete and misleading evidence at trial.

The suppressed evidence was material because there is a reasonable probability that, had the evidence been disclosed, the outcome of the proceeding would have been different.

Defendants' conduct was intentional, malicious, and undertaken in bad faith, demonstrating a reckless or callous indifference to Plaintiff's constitutional rights.

As a direct result, Plaintiff was deprived of a fair trial in violation of the Fourteenth Amendment.

Plaintiff's conviction is currently under appeal. Accordingly, Plaintiff seeks declaratory and prospective relief at this time and expressly reserves the right to seek damages upon favorable termination of the underlying criminal proceedings.

## V. DAMAGES

337. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered substantial damages.

338. Plaintiff was repeatedly subjected to unlawful detention, physical restraint, and intimidation, including being handcuffed and restrained without lawful justification.

339. Plaintiff suffered loss of liberty, including being prevented from leaving public spaces and conducting lawful business.

340. Plaintiff experienced significant emotional distress, including anxiety, humiliation, frustration, and mental anguish resulting from repeated encounters with law enforcement and government officials.

341. Plaintiff's reputation was harmed through public treatment as a suspect, including the display of Plaintiff's image and repeated law enforcement interactions.

342. Plaintiff's ability to access the courts and pursue legal remedies was obstructed, delayed, and impaired.

343. Plaintiff was deprived of his property, including the unlawful seizure and retention of his firearm.

344. Defendants' conduct was not isolated, but part of a pattern of retaliation and obstruction, amplifying the severity of Plaintiff's harm.

345. The actions of Defendants were willful, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights.

## Brady Violation and Prosecutorial Misconduct

Defendants' suppression of material exculpatory evidence, including the undisclosed fifty-nine (59) minute video recording, was not the result of negligence, oversight, or mistake, but rather constituted intentional, knowing, and bad-faith misconduct.

Defendants were aware that the withheld evidence was material to Plaintiff's defense and directly relevant to the legality of the detention, the credibility of officers, and the factual basis of the charges. Despite this knowledge, Defendants deliberately failed to disclose the evidence prior to trial and affirmatively misrepresented to the Court that all relevant discovery had been produced.

This conduct deprived Plaintiff of a fundamentally fair trial and represents a direct attack on the integrity of the judicial process itself.

The intentional suppression of exculpatory evidence, combined with affirmative misrepresentations to the Court, demonstrates a conscious and reckless disregard for Plaintiff's constitutional rights, including his rights under the Fourteenth Amendment to due process and a fair trial.

Such conduct is especially egregious where, as here, it was carried out by government attorneys vested with a constitutional duty to seek justice rather than secure convictions.

Defendants' actions were willful, malicious, oppressive, and undertaken with the intent to secure a conviction regardless of Plaintiff's constitutional rights.

Accordingly, this misconduct independently supports a substantial award of punitive damages in an amount sufficient to punish Defendants and deter similar constitutional violations by prosecutors and law enforcement actors in the future.

346. Plaintiff continues to suffer ongoing harm as a result of Defendants' actions.

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, and award the following relief:**

### A. Declaratory Relief

A declaration that Defendants' acts, omissions, policies, and practices described herein violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution;

B. Injunctive Relief

Preliminary and permanent injunctive relief prohibiting Defendants from:

1. Engaging in retaliatory enforcement actions;

2. Obstructing complaint and grievance processes;

3. Imposing unlawful escort or trespass restrictions without due process;

4. Interfering with the public's right to record law enforcement;

5. Maintaining policies that enable constitutional violations.

C. Compensatory damages in an amount to be proven at trial, but not less than $2,500,000.00, for:

1. Loss of liberty resulting from unlawful detentions and restraints;

2. Emotional distress, anxiety, humiliation, and mental anguish;

3. Damage to reputation and standing in the community;

4. Interference with Plaintiff's ability to access courts and pursue legal claims;

5. Loss of use and enjoyment of personal property, including Plaintiff's firearm;

6. Physical restraint and bodily intrusion resulting from unlawful handcuffing;

7. Ongoing stress and harm resulting from continued retaliation and obstruction.

D. Punitive Damages

Punitive damages against all individual Defendants in their individual capacities in an amount not less than $5,000,000.00, to punish and deter:

1. Willful and malicious retaliation against protected First Amendment activity;

2. Abuse of law enforcement authority;

3. Fabrication, alteration, and suppression of material evidence, including violations of clearly established obligations under Brady v. Maryland;

4. Intentional misrepresentation to the Court regarding the existence and disclosure of exculpatory evidence;

5. Deliberate interference with Plaintiff's right to a fair trial;

6. Intentional obstruction of Plaintiff's access to courts and complaint processes;

7. Knowing violation of clearly established constitutional rights;

8. Conduct demonstrating reckless, callous, and systemic indifference to federally protected rights.

E. Special Damages

All economic and non-economic damages permitted by law, including but not limited to loss of property, costs incurred, and other measurable harm;

F. Attorney's Fees and Costs

Reasonable costs and fees pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

G. Further Relief

Such other and further relief as the Court deems just and proper.

**VII. JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: April 3rd, 2026

Respectfully submitted,

*Phillip Charles Aught Jr.*

Phillip Charles Aught Jr.

Plaintiff in Proper Person

12333 Silvana Street

Las Vegas, Nevada 89141

(702) 210-6081

Phillipaught15@gmail.com